**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **ANMOLDEEP SINGH** | **CIVIL ACTION NO. 26-1429** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE JERRY EDWARDS, JR.** |
| **WARDEN WINN CORRECTIONAL CENTER, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## MEMORANDUM RULING AND ORDER

Petitioner Anmoldeep Singh,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions for a writ of habeas corpus under 28 U.S.C. § 2241.  Respondents oppose the petition.  [doc. # 13].  For reasons below, Petitioner's request for habeas corpus is GRANTED.

## Background

Petitioner is a citizen of India.  [doc. # 1, p. 1].  He entered the United States of America on approximately December 6, 2022.  *Id.*  "Upon entry, Petitioner was apprehended by ICE and placed in immigration detention."  *Id.* at 2.

On approximately December 6, 2022, DHS released Petitioner from custody and placed him on parole.  [doc. #s 1, p. 4; 1-2, pp. 13-18].

On approximately April 6, 2026, DHS re-detained Petitioner.  [doc. # 5, p. 4].  Petitioner states that a DHS officer detained him without any notice.  [doc. # 14].

---

[1] Petitioner's "A Number" is 243-103-272.

On July 13, 2026, an immigration judge ordered Petitioner removed from the United States.[2]  The appeal deadline is August 13, 2026.[3]

Petitioner filed this proceeding on approximately May 1, 2026.  He first claims that the Government is violating the Immigration and Nationality Act by failing to afford him a bond hearing/individualized custody determination.  [doc. # 1, p. 4].

Next, Petitioner claims that the Government violated his right to procedural due process by failing to provide him with notice and an opportunity to be heard before re-detaining him.  [doc. #s 1, pp. 4-5; 5, p. 6].  He has no criminal history.  [doc. # 5, p. 6].

Respondents opposed the petition on July 6, 2026.  [doc. # 13].  Petitioner filed a reply on July 17, 2026.  [doc. # 14].

### Law and Analysis

Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the [government]; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal citations omitted).

#### A. Liberty Interest

"No person shall . . . be deprived of . . . liberty . . . without due process of law[.]"  U.S. CONST. AMEND. V.   "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."

---

[2] https://acis.eoir.justice.gov/en/caseInformation (last visited July 20, 2026).

[3] *Id.*

*Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  *Id*. at 690.

In *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972), the Supreme Court held that the requirements of procedural due process applied to parole revocations.  The Court first noted that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others."  *Id.* at 482.  Buttressing the parolee's interest in liberty is the society's interest "in not having parole revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole" and its interest "in treating the parolee with basic fairness."  *Id.* at 484.

The Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  *Id.* at 482.  "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison."  *Id.*  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."  *Id.*  Therefore, a parolee possesses a protected interest in his "continued liberty."  *Id.*

Here, Petitioner's release on parole was similar to the parole described in *Morrissey*. His release allowed him—with the Government's explicit permission—the freedom to live in the United States. Thus, Petitioner has a protected liberty interest in his release.[4]

In addition, immigration officials released Petitioner subject to certain conditions. *Id.* This was an "implicit promise" that his release would "be revoked only if he fail[ed] to live up to the [release] conditions," like in *Morrissey*. *See* 408 U.S. at 482. As other courts have held, "[w]hen a person [is released from custody and] lives in society at large for years, [reasonably believed that the law required his release], and only then faces re-incarceration on the ground that he was [erroneously] released, the prospect of re-incarceration has implications both for him and the other individuals in his life as substantial as those of the parolee in *Morrissey*." *Hurd*, 864 F.3d at 682.

More importantly, procedural due process dictates that before Respondents re-arrest Petitioner, he be afforded notice and the opportunity to at least address Respondents' contentions surrounding his re-detention. "[D]ue process does not hinge on whether one has a winning argument, a colorable argument, or any argument at all." *Aurecchione v. Falco*, 2023 WL 6255529, at *12 (S.D.N.Y. Sept. 25, 2023) (citing *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) ("The fundamental requisite of due process of law is the opportunity to be heard. The hearing must be 'at a meaningful time and in a meaningful manner.'")). The two issues—

---

[4] *See, e.g., O.F.C. v. Almodovar*, 2026 WL 74262, at *7 (S.D.N.Y. Jan. 9, 2026) ("Both immigration parolees and those released on immigration bond are free to live their lives in this country and to form the . . . enduring attachments of normal life. . . . While released on bond, Petitioner was able to resume his life with his U.S.-citizen wife and his young U.S.-citizen children (one of whom was born while Petitioner was released). . . . The Court has little difficulty concluding that if the Government wishes to strip Petitioner of that liberty and these attachments, it must do so in a manner consistent with due process.") (internal quotation marks, quoted source, and record citation omitted).

4

procedural due process and the statutory interpretation of Sections 1225 and 1226 as addressed in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026)—overlap but are distinct.  Even assuming Petitioner is detained under Section 1225 and subject to mandatory detention under the statute, his statutory and regulatory statuses do not foreclose his procedural due process claim.[5]

**B.** *Mathews* **Factors**

"[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Here, the first factor above militates in favor of Petitioner as freedom from bodily restraint is the "most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 259 (2004); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).  To reiterate, "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

Petitioner established a liberty interest worthy of procedural protection when, with the Government's express permission, he exercised his freedom for over 3 years before the Government re-arrested him.   Respondents allowed Petitioner to establish his life in this country. Terminating his valued liberty likely inflicted a grievous loss.  *See generally Lopez Miranda v.*

---

[5] *See Marceau v. Noem*, 2026 WL 368953, at *1 (W.D. Tex. Feb. 9, 2026) ("Marceau's constitutional interest in her liberty exists above and apart from the Immigration and Nationality Act and attendant regulations.") (citing *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025)).

*Flores*, 2025 WL 3901908, at *3 (W.D. Tex. Dec. 10, 2025) (holding that "noncitizens acquire a protectable liberty interest when they spend years establishing a life in the interior of the United States, regardless of their citizenship status.").[6]

Next, the second factor above—the risk of an erroneous deprivation of such interest through the procedures used—weighs in Petitioner's favor because the Government did not offer Petitioner any procedure before re-detaining him. The risk of erroneous deprivation of his liberty interest is obvious where there is no pre-detention process to determine if, for instance, his circumstances have changed.

The third factor—the Government's interest, including any fiscal and administrative burdens that the additional or substitute procedural requirement would entail, if any—likewise weighs in Petitioner's favor. There is nothing before the Court demonstrating a governmental interest in continuing to detain Petitioner. While the Government has an interest in protecting the community and preventing flight, ICE already determined at least implicitly when it released Petitioner that he was not a flight risk or a danger to the community. Further, there is no indication in the record that Petitioner failed to comply with any conditions of release. But even if concerns of flight or protecting the community were present (nothing of record indicates that

---

[6] Even assuming *arguendo* that Petitioner's time living in the United States was insufficient to create a cognizable liberty interest (it was not), Respondents provided him with a liberty interest when they released him from custody. It is well established that once the government opts to provide a liberty or property interest, it cannot arbitrarily revoke this benefit without due process of law. *See Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) (holding in the context of "good-time credits" for prisoners that "a person's liberty is equally protected [by the due process clause], even when the liberty itself is a . . . creation of the State"); *Morrissey*, 408 U.S. at 482 (noting "that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others"); *Graham v. Richardson*, 403 U.S. 365, 374 (1971) (rejecting the concept that constitutional rights turn upon whether a governmental benefit is characterized as a "right" or as a "privilege").

they are), the parties can address them at a pre-deprivation hearing.[7]  Finally, Respondents do not identify any fiscal or administrative burden in providing additional or substitute process.[8]

Because all the factors support Petitioner, the Government violated his right to procedural due process under the Fifth Amendment to the United States Constitution.  Moreover, given the weight of the liberty interests at stake and the fact that a custody determination already occurred, immediate release is the appropriate remedy.  *See Alvarez- Rico* 2026 WL 522322 at *6 (immediate release); *J.U. v. Maldonado*, 805 F. Supp. 3d 482, 498 (E.D.N.Y. 2025) (ordering immediate release where the petitioner was re-detained "with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond"); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) ("Indeed, given the nature of the constitutional violation [petitioner] sustained here—i.e., Respondents' failure to conduct any kind of individualized assessment *before* [re-]detaining him—any post-deprivation review by an immigration judge would be inadequate.").

"The right to prior notice and a hearing is central to the Constitution's command of due process," as it "ensure[s] abstract fair play to the individual" and "minimizes substantively unfair

---

[7] *See Lopez-Arevelo*, 801 F. Supp. 3d at 687 ("[I]f such concerns exist, they would be squarely addressed if the Court were to grant the petition and order a bond hearing.").

[8] *See generally Alvarez Rico,* 2026 WL 522322, at *6 (S.D. Tex. Feb. 25, 2026) ("Indeed, given the high costs of detention, the fiscal and administrative burdens of providing noncitizens in these circumstances with some form of hearing pales in comparison with the burdens of re-detaining thousands of noncitizens who were previously released on recognizance."); *J.C.L.A.*, 2025 WL 2959250, at *7 ("[A]lthough the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is low.  In immigration court, custody hearings are routine and impose a minimal cost.  If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." (internal quotation marks and quoted sources omitted).

or mistaken deprivations." *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993). "The constitutional minimum of due process guarantees that notice and an opportunity to be heard be granted at a meaningful time and in a meaningful manner." *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 239 (5th Cir. 2012) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)) (internal quotation marks omitted). "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Id.* (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . .").[9]

Accordingly, Petitioner is entitled to immediate release in accordance with the terms and conditions of his prior release, and the Government may not re-detain him without first providing him pre-deprivation process, i.e., meaningful notice of re-arrest[10] and a hearing which shall also include a meaningful opportunity to be heard and an opportunity to respond to any of the Government's reasons and asserted grounds for his re-arrest.[11]

---

[9] *But see James Daniel Good Real Prop.*, 510 U.S. at 59-61 ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)).

[10] The undersigned uses "re-arrest" and "re-detention" interchangeably in this Memorandum Ruling.

[11] *See, e.g.*, *Diallo v. Trump*, 1:25-cv-2012 (W.D. La. March 5, 2026); *Alvarez-Rico*, 2026 WL 522322, at *7 ("Respondents' re-detention of Alvarez-Rico without a pre-detention showing (or even allegation) of a change in his circumstances violated Alvarez-Rico's procedural due process

Respondents contend: "that a reasonable time should be provided to the immigration-court system to address the recent [*Sosnava Rodriguez v. Ortega*, No. 26-50183, -- F.4th --, 2026 WL 1906557, at *7 (5th Cir. July 2, 2026)] decision, which . . . established a new legal standard within the Fifth Circuit for procedural-due process claims arising from statutorily authorized mandatory detention.  The appropriate next steps required by *Sosnava Rodriguez* will be undertaken within a reasonable time. The Court should not order Singh's release while that process is underway in response to this recent decision."  [doc. # 13, p. 3].  After Respondents filed their response, however, the Fifth Circuit vacated the panel opinion in *Rodriguez v. Ortega*. *See Rodriguez v. Ortega*, No. 26-50183, 2026 WL 2014647, at *1 (5th Cir. July 10, 2026).  Thus, the Court need not postpone Petitioner's release.

### Conclusion[12]

For the reasons above, **IT IS ORDERED** that Petitioner Anmoldeep Singh's request for habeas corpus is **GRANTED**.  Respondents, and the warden of Winn Correctional Center, shall (A) **immediately release** Petitioner from custody in accordance only with the terms and conditions of his prior release on parole, without any additional bond requirements or new

---

rights."); *Lopez-Arevelo*, 801 F. Supp. 3d at 674; *Marceau*, 2026 WL 368953, at *2 (collecting similar cases and similar dispositions); *J.C.L.A.*, 2025 WL 2959250, at *1 (finding, where the petitioner was released on his own recognizance in August 2024, and re-arrested in September 2025, that the petitioner was likely to succeed on the merits of his procedural due process claim because he had a protected liberty interest in release); *Guillermo M. R. v. Kaiser*, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest); *Vilela v. Robbins*, 2025 WL 3101334, at *6 (E.D. Cal. Nov. 6, 2025) ("Petitioner had been out of custody for nearly a year, and during that time, lived with her sister, worked, and developed ties to the community.  Her detention denies her that freedom."); *Lnu v. Bondi*, 2026 WL 395290, at *7 (W.D. Wash. Feb. 12, 2026).

[12] The undersigned finds no need to address any claim or request for relief not addressed herein.

conditions, and (B) if Petitioner has family and/or an emergency contact on record, notify them of the exact location and time of his release no less than two hours before his release.

IT IS FURTHER ORDERED that Respondents are ENJOINED AND RESTRAINED from re-detaining Petitioner unless and until he receives pre-deprivation process, including: (I) meaningful advance notice of the intent to re-detain him; and (II) a hearing at a meaningful time which shall also provide Petitioner a meaningful opportunity to be heard and a right to respond to any of the Government's reasons and asserted grounds for his re-arrest before detaining him again.

IT IS FURTHER ORDERED that Respondents shall, within 24 hours after Petitioner's release, file a status report confirming his release.

In Chambers, Alexandria, Louisiana, this 21st day of July, 2026.

_____
Jerry Edwards, Jr.
United States District Judge